DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS,

### DURING THE YEAR 1905.

## William T. Hunter v. Ella Hunter.

1. ADULTERY—*when condoned.* Where the husband knowing of the adulterous conduct of his wife lives and cohabits with her for a period of four years thereafter, he condones the offense.

2. DESERTION—*what does not justify.* Desertion by the husband is not justified by a showing that his wife was slovenly, failed to keep her children, her household and her husband's and children's clothing in the shape and manner expected of a wife, was unclean as to her own person and clothing and was lazy and neglectful.

3. ALIMONY—*when allowance in gross improper.* It is improper in a separate maintenance proceeding to allow alimony in gross.

4. ALIMONY—*when, cannot be made lien.* A court of chancery has no power to make a decree for alimony a lien on personal property.

5. SOLICITOR'S FEES—*when allowance of, improper.* The allowance of solicitor's fees in a separate maintenance proceeding is improper where no evidence has been preserved to support the same.

6. SUPPORT MONEY—*provision should be made for, in separate maintenance decree.* In a decree for separate maintenance, the provision for the support of the wife and of the children should be treated separately, and both the wife and the children provided for.

Separate maintenance proceeding. Appeal from the Circuit Court of Shelby County; the Hon. TRUMAN E. AMES, Judge, presiding. Heard in this court at the November term, 1904. Affirmed in part and reversed and remanded in part, with directions. Opinion filed June 7, 1905.

WALTER C. HEADEN, for appellant.

380

J. K. P. Grider and Chafee & Chew, for appellee.

Mr. Presiding Justice Puterbaugh delivered the opinion of the court.

This is a bill by appellee against appellant for separate maintenance. The chancellor before whom the cause was heard in open court, found that the equities were with the complainant; that the defendant had deserted her without any reasonable cause, and that she was living separate and apart from the defendant without fault on her part; and decreed that the defendant pay to the complainant the sum of $600 in gross, on or before August 1, 1904, to be in full satisfaction of all further liability on the part of defendant to maintain and support complainant; that he pay to her the sum of $100 as her reasonable solicitor's fee, and all costs of the proceeding; that each of the parties should have the care, custody and control of one of their two children; and that an injunction theretofore granted restraining defendant from selling, secreting or removing any of his personal property "be dissolved as to one-half of the property, or such part thereof as will enable the defendant to comply with the terms of this decree, and upon full compliance with all orders herein," that said injunction be fully discharged and released.

The bill charges that in March, 1903, the defendant wilfully deserted the complainant without any reasonable cause and has since persisted in such desertion; that he was often cruel, unkind and inhuman toward complainant and that most of the time she was compelled by him to assist him in plowing and in other hard manual labor, by reason of which she was compelled often to neglect her family and household duties; that defendant was worth over all indebtedness the sum of $3,000, and that his annual income was not less than $400 and that she had no property.

Appellant by his answer expressly denies all the allegations of the bill, and charges that the separation was due to the wicked and adulterous conduct of appellee, on account of which he was compelled to leave his home and to

decline to longer live and cohabit with her as her husband.

The chief ground relied upon for reversal is that there is not sufficient competent evidence in the record to sustain the material averments of the bill.

The evidence shows that the parties were married in February, 1894, appellee being at the time 17 and appellant 29 years of age; that they have had two children both of whom are living; that since their marriage they have lived as tenants, upon six different farms; that in March, 1903, appellant left appellee, taking with him their oldest child, since which time he has refused and neglected to contribute anything to the support of her or their younger child.

The evidence offered by appellee tends to prove that during the time that they lived together, appellant failed and refused to provide appellee with sufficient suitable and comfortable clothing or to furnish sufficient household furniture for the use of his family; that the dwelling house upon the farm which they had occupied at the time of their separation, was old and in a bad state of repair; that while they were living together appellant compelled appellee to labor in the fields, to plow, harrow, shuck corn, chop wood, feed the stock, milk a large number of cows and to perform various other kinds of manual labor. That he frequently cursed and abused her in order to compel her to do such work.

The evidence offered by appellant tends to show that appellee was not a good house-keeper; that she failed to keep clean the house, the bed-clothing, or the children and their clothing, or even her own person or clothing; that she neglected her household duties, and failed to prepare the meals at proper and seasonable hours, that she had good and ample clothing, and that appellant provided sufficient supplies of all kinds for the household and family.

The statute entitled "Husband and Wife" (R. S. 1903, page 1039) provides "That married women, who, without their fault, now live. or hereafter may live, separate and apart from their husbands, may have their remedy in equity * * * for a reasonable support and maintenance, while

they so live, or have so lived, separate and apart," etc.

Appellant admits that he left appellee voluntarily, and has since refused to live or cohabit with her. It is not denied that she was at all times willing and anxious to live with him. The facts are similar to those involved in Bartlow v. Bartlow, 114 App., 604, where this court said: "The question is: Is the complainant living separate and apart from her husband without her fault? Otherwise put, the question is: Did the defendant desert his wife wilfully, and without any reasonable cause? There is no question that he left her wilfully, that is, knowingly and with the intent to remain absent, so that the material inquiry is: Did he desert her without reasonable cause? Ordinarily in suits under the statute providing for separate maintenance, the wife leaves the husband, and the burden is cast upon her of showing that she had reasonable ground for leaving him. In this case the husband leaves the wife, and while the burden is still upon her to show that she is living separate and apart from her husband without her fault, yet it is of a negative character. The most that she can be expected to show in the first instance is that she reasonably performed her duty as a wife, and then the burden is cast upon the husband to show that he had reasonable ground to leave her; and upon the whole case presented the question is: Is the wife living separate and apart from her husband without her fault?"

While the proof indicates that appellee was far from being an ideal housekeeper; that she was slovenly and failed to keep either her children, her household and household linen, or the clothing of her husband and children, in the shape and manner expected of a wife, mother and housewife; that she was unclean as to her own person and clothing, and that she was lazy and neglectful in the performance of her household duties,—these facts of themselves were far from sufficient to warrant, excuse, or justify appellant in deserting her and their child and in failing to provide for them. When appellant by his marriage vows took her for "better or for worse" it may be said that, to this ex-

tent at least, he "assumed the risk." It follows that if his desertion of appellee was through her fault, it must have been because of her alleged improper conduct with other men.

Upon this question the evidence is substantially as follows: Appellant testifies that during the month of either June or July, 1899, he caught appellee in *flagrante delicto* with one Sexson, a farm hand in his employ. Sexson testifies that he had sexual intercourse with her at about that time. The conduct of appellant, immediately following the discovery of his wife's glaring infidelity, as detailed by him, was so unusual, if not improbable, as to weaken his credibility. There was evidence tending to impeach the veracity of Sexson, and his story as it appears in the record, we think, sufficiently warrants the conclusion that he was not only unprincipled and degraded, but unworthy of belief as well. If it be conceded, however, that appellee was guilty of adultery with Sexson, the offense was committed nearly four years prior to the separation. Appellant admits that during the intervening period he lived and cohabited with appellee as her husband. The offense was thereby condoned. Davis v. Davis, 19 Ill., 334. Such cohabitation, after appellant had learned of appellee's adultery, was, in effect, a forgiveness of the offense, upon condition that it should not be repeated. Sharp v. Sharp, 116 Ill., 509. The only evidence tending to show a repetition thereof, was that relating to the conduct and relations of appellee with one Dr. Humphreys. In support of his charge of adultery by appellee with Humphreys, appellant testifies, that immediately prior to his desertion of her, appellee, upon being charged by him therewith, confessed that she had been guilty of adultery, not only with Sexson, but with Humphreys and other men as well. Mary Bumgardner, a niece of appellant, testified that appellee told her that, "Dr. Humphreys had hugged and squeezed her," and that a married woman had a right to permit men other than her husband to do so. A letter written by appellee to her sister on November 9, 1901, which was intercepted and retained by appellant,

was introduced in evidence. We will not quote from, nor refer to the same, further than to say that its contents, general tone, style and character clearly indicate that appellee is not only illiterate, uneducated and intellectually weak, but that she is also, because of the lack of proper moral training, and her other deficiencies, utterly devoid of that sense of propriety and decency which ordinarily governs and controls a pure and virtuous wife and mother. We think, however, that the supremely silly and boastful character of the statements appearing in the letter, indicate the overweening vanity of the writer and her desire for attention and flattery, rather than a vicious and lewd disposition.

Appellee testifies, that appellant left her and the children the first part of March, 1903, telling her that he was going to take her to her father's house until he got another place; that two days thereafter her father came and took her to his home; that he returned in two or three days and took the oldest child away; that he again said he was going house-keeping again when he got another place; that he called upon her at intervals until January, 1904; that at the time he left her he made no charges against her, nor did he state that he was going to leave her permanently, and that she had no knowledge that such was his intention. She denies that she ever committed adultery with Sexson, Humphreys or any one else; or that she ever admitted to appellant that she had done so, or that she made the statements testified to by Mary Bumgardner. She admits having written the letter referred to, but says that she did it "for fun." Dr. Humphreys testifies, that appellee several times called at his office for treatment and had medicines. He was then asked, what took place on such occasions; whereupon counsel for appellant objected to the question upon the ground that the testimony proposed to be offered was not in rebuttal and the court improperly sustained the objection. The contents of the letter to the sister are manifestly insufficient to establish the charge of adultery with Dr. Humphreys. Had Dr. Humphreys been permitted to tes-

tify upon the question, it is fair to presume he would have denied that any improper relations existed. Furthermore the statements of counsel for appellant during the colloquy between court and counsel at the time the ruling was made, indicate clearly that the charge of adultery with Humphreys was not seriously urged. It is not contended, in argument, that the letter tended to prove anything further than that the writer was not a pure and virtuous woman. Aside from appellee's alleged confession, there is no evidence which would have warranted the Chancellor in finding that the offense alleged to have been committed with Sexson, was revived by a repetition thereof with others. The contention as to whether or not the alleged confession was actually made depends almost entirely upon the respective credibility of appellant and appellee, one of whom was clearly guilty of perjury. The chancellor, who saw and heard the witnesses testify and observed their manner while on the stand, is better qualified than we are, to judge of the weight to be given to their testimony. "In chancery cases, where the evidence is conflicting and heard in open court the error in finding as to fact should be clear and palpable to authorize a reversal." Elmstedt v. Nicholson, 186 Ill., 580.

It is further contended that it was error to render a decree for $600 in gross. We think there is merit in such contention. While in cases of absolute divorce alimony is occasionally decreed to be paid in gross, such order is invariably made upon condition that it is to be in full satisfaction of all future claims for support. Where the bonds of matrimony are perpetually severed and the parties are henceforth as utter strangers, or where other special reasons exist therefor, it may be desirable and proper that such order be made. The practice, however, should not pertain in suits for separate maintenance. The reasons are obvious. Notwithstanding the decree of separation, the marital relations still exist and will continue, in the absence of a subsequent decree of absolute divorce, until the death of one of the parties. The sole effect of the decree

Hunter v. Hunter.

is to permit the wife to live apart from her husband without forfeiting her right to be supported by him. The duty of the husband to support his wife continues as it was prior to the separation, the only difference being that he is compelled by law to pay her a determined fixed amount for that purpose. In all other respects the rights and duties of the parties remain unchanged. If a wife, after receiving a gross sum for her future support, should through theft, sickness or other misfortune, lose, or be compelled to expend, or should even squander the same, the result would often be to impose the burden of her support upon the public. If, in that event her husband is no longer liable for her support, the consideration of public policy alone would render such a decree as that in question, improper. On the other hand, to compel the husband to further contribute to her support, would be unjust and inequitable. Again, if at any time subsequent to a decree for separate maintenance the wife should determine to return to and live with her husband, which she would clearly have a right to do at any time, he would be bound in law to support her, notwithstanding he may have already paid to her a large sum in gross for her future support. We are satisfied that such gross allowance is manifestly not within the intendment of the statute and that in so far as the decree provides therefor, it is erroneous. The decree is further erroneous and improper for the reason that it continues in force the injunction theretofore granted, as to one-half of the personal property of appellant, or such portion thereof as would enable him to comply with the terms of the decree, until such time as he had done so. It does not appear that he owned any real estate. No specific one-half or other portion thereof, being in any way indicated, the effect of the injunction is to make the decree a lien upon all the personal property of appellant.

In Griswold v. Griswold, 111 Ill. App., 269, we held that a court of equity has no power to make a decree for alimony, a lien on personal property, and further, that it was of doubtful propriety for a court of equity permanently to enjoin a

husband from selling or disposing of his property. As is there said: "It cannot be presumed that the appellant will pauperize himself to avoid the payment of a reasonable alimony to his wife, and we think the legitimate powers of a court of equity are amply sufficient to protect her."

No evidence is preserved in the record upon which the allowance of the sum of $100 to appellee, as her reasonable solicitor's fee, can be predicated, and the decree to that extent was improper. In Metheny v. Bohn, 164 Ill., 498, in considering the propriety of a decree in a partition suit which allowed a fee to the complainant's solicitors, the court said: "The rule that the evidence to sustain an allowance of this character must be preserved in the record has been repeatedly stated by this court. It was established as a rule in Goodwillie v. Millimann, 56 Ill., 523, where it was said (p. 527): 'As a rule of practice, the evidence upon which such an allowance is made should be preserved in the record. Where such large sums are allowed and the rights of litigants are likely to be so materially affected they should not be deprived of having a decree reviewed in an appellate court.' And this rule has prevailed whenever the question has arisen since that time, whether in suits for partition or on the dissolution of an injunction or otherwise. * * * 'In fixing the amount of a reasonable fee, the examination should be directed to what is customary for such legal services where contracts have been made with persons competent to contract, and not what is reasonable, just and proper for the solicitor in the particular case. The inquiry should be, not what an attorney thinks is reasonable, but what is the usual charge.' * * * When the question is considered in an appellate court, although it is one about which the court is well qualified to form an opinion and upon which it will exercise an independent judgment, the evidence is necessary to a proper review of the allowance, for the purpose of showing what the ordinary and usual charges of solicitors for like services are in the court where the allowance was made, in cases where such fees are the subject of contract between solicitor and client."

In Jones v. Jones, 111 App., 396, we declined to reverse a decree for divorce which allowed the defendant the sum of $25 as her reasonable solicitor's fees, notwithstanding no evidence was preserved in the record of the value of the services of such solicitor. The sum there allowed was so small as to be fairly considered nominal. It was clear from the record, that any less sum would have been grossly inadequate and the decree was accordingly affirmed. While in the present case we are able to determine, to some degree, the amount and character of the services performed, we are unadvised as to the ordinary and usual charges of solicitors for like services in the trial court, and believe that appellant should be permitted to have the decree, in this respect, reviewed in this court.

The decree is further defective in that it makes no provision for the support of the child, Harry, whose care, custody, control and education is awarded to complainant. Under the Divorce Act, which applies equally to the proceedings of this character, alimony for the maintenance of the wife and support money for the benefit of a child or children, are deemed separate and distinct, and notwithstanding the wife may have accepted a gross sum in discharge of all her claim for alimony, she may thereafter, if the custody of a child or children of such marriage has been committed to her, apply for an allowance for its or their support and education. Konitzer v. Konitzer, 112 App., 326.

In so far as it finds that complainant is living separate and apart from the defendant without her fault, the decree is warranted by the evidence, and is affirmed; but for the errors indicated, it will be reversed and remanded with directions to the Circuit Court to dissolve the injunction; enter a decree requiring the defendant to pay to complainant in monthly installments beginning August 1, 1904, a reasonable sum for the support and maintenance of herself and child, Harry; and further, that he pay to complainant as fees for the legal services rendered by her solicitor, such sum as is customarily paid in said court for legal services

of like extent and character. The accumulated amounts due to complainant for the support of herself and child to be paid within 30 days from the entry of such decree.

*Decree affirmed in part and reversed and remanded in part with directions.*