## P. L. Hunter, Appellee, v. J. E. Bumgardner, Appellant.

1. FRAUDULENT CONVEYANCES—*propositions of law.* The proposition of law, that whenever a person sells or transfers his property to another, with intent to hinder, delay, or defraud his creditors, or his wife in her efforts to obtain her necessary support from him, then in such case, no action can be maintained by any of the parties to such fraud against any other party to such fraud, is correct.

2. FRAUDULENT CONVEYANCES—*bills and notes.* A finding of the court for plaintiff on a note which is alleged to have been given as false evidence of a purchase of property in a fraudulent scheme to hinder the wife of the owner of such property from collecting

alimony at the termination of a divorce suit then pending, is supported by the evidence which, although conflicting, tends to show that the maker of the note, while holding the property in question as bailee, gave the note in payment therefor to the plaintiff, the payee, to whom the property had been given in satisfaction of a prior debt and who was not shown to have had any knowledge of the alleged fraud.

Appeal from the Circuit Court of Fayette county; the Hon. J. C. McBRIDE, Judge, presiding. Heard in this court at the March term, 1912. Affirmed. Opinion filed October 7, 1912.

ALBERT & MATHENY, for appellant.

BROWN & BURNSIDE, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit on a promissory note, for $700.00, dated July 10, 1906, due twelve months after date, given by appellant, J. E. Bumgardner, to appellee, P. L. Hunter. To the ordinary declaration on a note, with the common counts, there was filed, in addition to the plea of *non assumpsit,* a special plea, which stated that one W. M. Hunter (a son of appellee) was involved in litigation with his wife, who was seeking to obtain alimony and separate maintenance; that in order to defraud his wife out of any judgment she might obtain, said Hunter fraudulently transferred divers horses and other property owned by him to the appellant; that said fraudulent transfer was made to defraud the creditors and wife of said Hunter; that, at the request of said Hunter and appellee and their agents, appellant made and delivered the note sued on as false evidence of a purchase of said property; that appellant was directed by said Hunter and appellee and their agents to sell said property so fraudulently transferred to him and to deduct from the sale price obtained all the cost and expenses of keeping, caring for and selling said property, together with pay for his services, and deliver the surplus to

appellee and said Hunter and their agents, which the appellant did; that there was no valid consideration for said note and that the consideration therefor had wholly failed. A replication was filed to the special plea and issues were joined.

A jury having been waived by the parties, the trial was had before the court, who found in favor of appellee, and gave judgment for her in the sum of $452.91.

Propositions of law were presented by appellant, all of which were held in his favor by the court.

The theory of the law, held by these propositions, were substantially the same as that set forth in the third, which stated that, "Wherever a person sells or transfers his property to another, with intent to hinder, delay or defraud his creditors, or his wife in her efforts to obtain her necessary support from him, then in such case, no action can be maintained by any of the parties to such fraud against any other party to such fraud." There does not appear to be any difference of opinion between the parties as to the law governing the case, and the same is correctly stated by the propositions submitted and marked "held." The only question presented to us is whether the proofs in the case were sufficient to sustain the finding and judgment of the court below in favor of appellee.

The proofs in the case were substantially as follows: P. L. Hunter, appellee, was the mother of W. M. Hunter and J. T. Hunter. W. M. Hunter was married and had two children and in the summer of 1905, a suit against him, brought by his wife for alimony and separate maintenance, was pending. She had obtained a decree against him for support and an appeal had been taken to the Appellate Court for the third district, which, on June 7, 1905, reversed the decree and remanded the cause with certain directions. Hunter v. Hunter, 121 Ill. App. 380. During the summer, it appears that appellee tried without success to sell some horses which he owned. Later on, during the same year, W. M. Hunter went to appellant, who then

lived in Illinois, but who had rented a place near For-
dyce, Arkansas, and was making arrangements to
move there and asked appellant to ship his horses in
the name of appellant or his brother, who was going
along, stating, as appellant testified, that he wanted
to get the property out of the reach of his wife. Ap-
pellant further testified that Hunter asked him to give
a note for the property to show it had been trans-
ferred, but this was not done. The horses and some
other property were, however, shipped in December,
1905, with appellant's property, to Fordyce, Arkansas,
there being two car loads, one of which was shipped
in the name of appellant, and the other in the name
of his brother. Hunter also went to Fordyce and re-
mained with appellant about two weeks, during which
time the latter also kept the horses. At the end of
the two weeks appellee, together with a niece and a
child of the latter, came to Fordyce and they, together
with W. M. Hunter, went to a place he had rented,
taking with them his property which had been at ap-
pellant's place. They lived together on a rented place
in Arkansas until June, 1906, when an officer from
Shelby county, Illinois, came there who arrested W. M.
Hunter for wife abandonment, and took him back to
Illinois where he was confined in the jail of said
county for some six months. Soon after W. M. Hun-
ter was brought back to Illinois, his brother J. T.
Hunter wrote to appellant telling him to sell every-
thing off down there for appellee except the household
goods, some harness and fly nets, which he was di-
rected to send back to Illinois. Appellant shortly af-
terwards came back to Illinois and had a conference
with the Hunter brothers, who asked him to look after
appellee, their mother, and the stock and to sell the
stock as rapidly as possible. Upon appellant's return
to Arkansas he took appellee to his house where she
remained some three weeks, at the end of which time
he made arrangements for her return to Illinois. It
was while appellee was at the house of appellant, just

before her return to Illinois, that appellant executed and gave to her the $700.00 note in suit.

Appellant testified that he said nothing to appellee when he gave her the note and that she made no remarks concerning it; that he never bought any property from her; that he never talked to appellee about buying the property; that as a matter of fact the property remained the property of W. M. Hunter; that there was no consideration for the note.

W. M. Hunter testified that he owed appellee, his mother, $1400.00 and that he sold the property to her for $1200.00 to be credited on that amount. His brother, J. T. Hunter, testified that he knew W. M. Hunter was indebted to his mother for borrowed money; that he, witness, asked appellant to sell the property for his mother and turn the money over to her and send her back soon; that appellant said the stuff ought to be worth $1,000.00; that witness told him, "If he wanted to keep the stuff to make ma a note for whatever he could invoice it at and he said he would do that and if he sold the property, he would divide the balance there was left;" that later he received a letter, introduced in evidence, from appellant in which he said he would give appellee his note for $700.00. Witness denied that he told appellant he wanted him to give the note to cover up the transaction of his brothers. There was some correspondence between the Hunter brothers and appellant, introduced in evidence, some of which tended to show that appellant had bought the property of appellee, while other parts tended to show that he was selling it either for W. M. Hunter or appellee.

Appellee was not a witness, and there was no competent evidence tending to charge her with knowledge of any fraud connected with the transaction in the course of which she received the note. Appellant paid $265.00 which, on December 6, 1906, was credited on the note and this suit was brought for the balance.

The evidence in the case was conflicting, but upon

the whole appears to us to have warranted the finding of the court below and the judgment will therefore-be affirmed.

*Judgment affirmed.*

MR. JUSTICE McBRIDE having tried this case in the court below, took no part here.