John L. Church, Appellant, v. Juliet Church, Appellee.

Gen. No. 43,230.

Opinion filed January 8, 1945. Rehearing denied January 29, 1945. Released for publication January 29, 1945.

E. A. BIGGS, of Chicago, for appellant.

CANTWELL & CANTWELL, of Chicago, for appellee; ROBERT E. CANTWELL, JR. and LOUIS YAGER CANTWELL, both of Chicago, of counsel.

MR. JUSTICE MATCHETT delivered the opinion of the court.

John L. and Juliet Church are husband and wife. January 28, 1944, John L. filed his complaint, averring they were married May 30, 1929, lived together up to December 5, 1942, and had two children, daughters; that without cause, on December 5, she deserted him and has persisted in such desertion. He prayed divorce and custody of the children. She answered, admitting the marriage and separation but denied that he had conducted himself as a kind and indulgent husband and denied that she had deserted him regardless of their marriage vows, etc. She filed a counterclaim, praying for separate maintenance, custody of the children and attorney's fees.

The causes were put at issue, the evidence taken, the court entered a decree dismissing his bill for want of equity and granting her counterclaim for separate maintenance, custody of the children and attorney's fees.

The case is in some respects quite unusual. We have read the entire record.

Plaintiff insists there should be a reversal in the first place because the court "allowed prejudicial statements to enter into the record based upon the customs of the church to which the parties belong." Both parties were members of the Catholic Church. Differences had existed between the parties for some time prior to the separation and the filing of the bill. It appears from the evidence a written agreement with reference to their living separate and apart had been prepared and signed and that Mrs. Church had gone to what was known as the "Chancery Office" of the church in the hope of getting their domestic troubles

settled. Mr. Church testified that Father Fitzgerald called him on the telephone and asked him if he was the plaintiff in a divorce case; that he replied he was; that he was then asked if he had any authority of the church to file the suit, to which he replied "No." He was then asked to come to the office and talk the matter over but refused to do so.

The introduction of this evidence was material to the issues. Plaintiff charged his wife with wilful desertion. They were married in the Catholic Church and according to its customs. When differences arose tending to break the marriage ties the wife appealed to the church in the interest of family unity. Its officers offered their services in an attempt to effect a reconciliation. Plaintiff declined to accept those services. This was competent evidence for the purpose of showing the attitude of mind of the parties at that time. The introduction of this evidence was not for the purpose of arousing religious prejudice nor would it tend to do so. Had the parties been members of the Synagogue or of a Protestant organization, like evidence would have been admissible for a like purpose and would have been quite material as tending to show the attitude of mind of both the parties. This is far indeed from attempts to stir up religious prejudice, which the courts always condemn, such as attempts to influence a jury by appeals to the racial or religious views of the parties.

It is contended in the second place that the findings of the court were manifestly against the weight of the evidence. It is said for plaintiff that he provided a good home for his family; that he was a hard worker, held a responsible position and loved his children. The brief of plaintiff states that he "in every important respect was a good husband and father." As already stated, we have read the whole record. We do not agree with this commendation. The uncontra-

dicted evidence shows that on several occasions plaintiff beat his wife, and he admits that on one occasion, because the young daughter gave to her mother information in regard to his conduct, which he did not wish her to have, plaintiff struck the child also. That the wife may have condoned this does not exonerate him, for condonation is always conditional upon an implied promise that the same or similar offenses will not be repeated. By agreement of the parties the elder daughter was permitted to be questioned in chambers without either party or attorneys present. The trial judge said, "The little girl . . . came into my chambers and told me about the conduct of her father towards her mother, and that her father struck her." Of course, the root of the whole matter was the undenied fact that plaintiff, husband and father, had become infatuated with his secretary. Mrs. Church says she got on her knees and begged her husband on behalf of the children to save their home; that he refused, saying he didn't love her; that she said, "Let us go back and start all over"; that she put her arms around him, and he pushed her away. She says she begged him to quit his job and go to some other place with the family and he refused. She called the secretary's mother and father. The father called plaintiff and told him to stay away from his daughter and leave her alone. Before she left on December 5, Mrs. Church called her husband up and received from him the statement that he had not been in love with her for two years, since the secretary started in the office. In contrast with the attitude of the wife and mother is that of this plaintiff, who says that after December 7, 1942, he had no occasion to ask her back and admitted he never asked her to come back and never made any such overture to her. Indeed, the uncontradicted evidence shows that from August 1942, until she left, they occupied separate bedrooms. There is absolutely no

doubt from the reading of the record what the state of his mind is. To give him a divorce for alleged desertion would be a travesty on justice.

The record shows that in the course of the trial the attorney for defendant asked the daughter, Patricia, to take the stand, whereupon attorney for Mr. Church said: "If your Honor please, as a family man you know what will occur here if we go through with the cross-examination of this little girl, which I will want to do, so I make the suggestion, if it is agreeable to Mr. Cantwell and your Honor, that you take the little girl in chambers and I will be bound by what she says. I do not think we ought to subject her to this cross-examination in open court."

"The Court: Let the record show that at the suggestion of both counsel the Court interviewed Patricia Church, the daughter of the parties to this divorce proceeding, and that both counsel stipulated they will be bound by this testimony or statement so made to the Judge, the same as if heard on the witness stand on direct and cross-examination. Is that correct?
Mr. Cantwell: That is correct.
Mr. Clancy: Correct, yes.
The Court: Very well. Call your next witness."

The record contains a statement that "the child, Patricia, was then interrogated privately by the court with the consent of both parties." We realize the temptation to indulge in practice of this kind in a case of this sort but we think it ought not to be commended. The rule applicable to the review of decrees in equity has been materially affected by section 64 (3) of the Civil Practice Act (Smith-Hurd Ill. Ann. Stat., ch. 110, par. 188, p. 548 [Jones Ill. Stats. Ann. 104.064]). It provides:

"No special findings of fact or certificate of evidence shall be necessary in any case in equity to support the decree."

This subsection would seem to give to decrees in equity upon review the same qualities possessed by judgments at law and to relieve the party in whose favor the decree is rendered from preserving facts sufficient to support the decree. *First Nat. Bank of Chicago v. 10 West Elm St. Bldg. Corp.,* 277 Ill. App. 337; *Eick v. Eick,* 277 Ill. App. 329. Plaintiff seems, therefore, to be put in the position of attacking a decree as not supported by the evidence when the record shows that all the evidence taken is not before the reviewing court. The defendant, however, does not urge this point. As before stated, we have read the entire evidence. While plaintiff in a general way denied any improper relations with his secretary, he does not deny the specific testimony of his wife that he struck her and beat her and that he told her he had ceased to love her and did love his secretary. He also admitted he struck Patricia because she told her mother that he had been out with his secretary. There is abundant evidence in this record tending to show the defendant has been a loyal wife and a good mother. The decree on the merits is justified by this record.

Plaintiff argues it was error to enter an order allowing defendant additional solicitor's fees without taking evidence as to the value of the services rendered. Several cases are cited, such as *Blake v. Blake,* 80 Ill. 523; *Hunter v. Hunter,* 121 Ill. App. 380; *Hopper v. Hopper,* 314 Ill. App. 572, and *Knol v. Knol,* 171 Ill. App. 412. While the safe rule is to offer evidence, we hold there was no reversible error in entering this order. The amount is not large and the judges of this court are not without knowledge as to the actual value of services here rendered nor of the extent of such services, which appear from the record. Plaintiff does not urge the amount allowed is, in fact, unreasonable. In *Wesselhoeft v. Wesselhoeft,* 369 Ill. 419, the Supreme Court allowed a much larger sum as fees, without opinion evidence of value under circumstances not unlike

those disclosed by this record, although it was there urged the amount allowed was, in fact, unreasonable. The decree will be affirmed.

*Affirmed.*

NIEMEYER, P. J., and O'CONNOR, J., concur.