Charles R. Lutz and Nancy G. Lutz, Appellees, v. Irene Bender and Herman Fidler, Trading as Rene Apartments, Appellants.

Gen. No. 44,920.

Opinion filed March 8, 1950. Released for publication April 3, 1950.

CHARLES L. COHNS, of Chicago, for appellants.

ARTHUR GEORGE, of Chicago, for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

In an action tried in the county court of Cook county without a jury, Charles R. Lutz and Nancy G. Lutz were awarded a judgment against Irene Bender and Herman Fidler for $251, being three times the sum of $42, or a total of $126 as damages, and the further sum of $125 for attorney's fees, pursuant to sec. 205 of the Housing and Rent Act of 1947. Defendants, appealing, ask that the judgment be reversed.

On September 14, 1947, plaintiffs rented from the defendants apartment 42F in the building at 1404 North Clark street, Chicago, known as the Rene Apartments, at a weekly rental of $18 payable four weeks in advance. The apartment, containing three rooms, had been redecorated and furnished. This housing

unit had been changed from an unfurnished to a furnished apartment and plaintiffs were the first tenants to occupy it after the change. Plaintiffs paid rent for the premises at the rate of $72 for each period of four weeks. They paid the rent to defendants for the period from September 14, 1947, to and including February 29, 1948. Each time the rent was paid defendants gave plaintiffs a receipt for $72. All of the receipts, six in number, were received in evidence. At the time the apartment was rented plaintiffs stated that they had two children living with them. Herman Fidler, one of the defendants, testified that at the time the apartment was rented to plaintiffs, he told Charles R. Lutz, one of the plaintiffs, that "we were going to get a rate on it from the OPA, we are going to charge the same amount as we charge for the other apartments in the building, which is eighteen dollars a week, and we collect all rent there four weeks in advance, and he [Lutz] said, 'all right, I will take it.' " Mr. Lutz denied that Mr. Fidler told him, at the time of renting, that the accommodations were changed from unfurnished to furnished apartments, or that defendants would make application "to the OPA to approve that eighteen dollar a week rental."

There was testimony of a misunderstanding between Mr. and Mrs. Lutz; that plaintiffs moved from the premises about January 15, 1948; that Mr. Lutz invited Mrs. Antoinette Nielson and her family to move into the apartment, which they did; that the Nielsons occupied the apartment from about January 15, 1948, without the knowledge or consent of defendants; that Mr. Lutz collected from Mrs. Nielson $40 for the last half of January 1948, and $72 for the month of February 1948; and that the money Mr. Lutz received from Mrs. Nielson as rent was in turn given in payment of rent to the defendants by Mr. Lutz. After February 29, 1948, Mrs. Nielson and her family became the ten-

ants of defendants in the apartment. Mr. Lutz testified that in January 1948, his wife and children moved to an apartment in another building, but that he maintained his residence in the Rene Apartments until February 29, 1948.

Plaintiffs claim that defendants demanded and received $42 per month in excess of the maximum rent for the period from September 14, 1947, to December 4, 1947, and $21 per month in excess of the maximum rent for the period from December 5, 1947, to February 29, 1948, or a total of "approximately" $200 in excess of the maximum rent. They state that under sec. 205 of the Housing and Rent Act of 1947, recovery of any amount in excess of the maximum rent should be trebled. Therefore, they asked damages of $600, plus $150 as reasonable attorney's fees, and costs of suit. Sec. 205, on which plaintiffs rely, reads:

"Any person who demands, accepts or receives any payment of rent in excess of the maximum rent prescribed under section 204 shall be liable to the person from whom he demands, accepts, or receives such payment, for reasonable attorney's fees and costs as determined by the court, plus liquidated damages in the amount of (1) $50, or (2) three times the amount by which the payment or payments demanded, accepted or received exceed the maximum rent which could lawfully be demanded, accepted, or received, whichever in either case may be the greater amount: Provided, that the amount of such liquidated damages shall be the amount of the overcharge or overcharges if the defendant proves that the violation was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. . . ."

In the judgment order the court found the issues against the defendants and that plaintiffs "were overcharged the sum of $21 for each of two months, or the sum of $42"; that the defendants "wilfully violated

124

Sec. 205 of the Housing and Rent Act of 1947, and that as a result of said violation the plaintiffs are entitled to recover treble damages, and that in addition thereto plaintiffs are entitled to reasonable attorney's fees.'' The court thereupon entered judgment in favor of plaintiffs for $251, and costs, arrived at by multiplying $42 by three and adding $125 for their attorney's fees.

On October 14, 1947, defendants filed in triplicate with the area rent director on the forms supplied by that office, a petition for adjustment of the rent of plaintiffs' apartment. To this petition they attached a copy of the registration statement. They requested that the rent be adjusted to $18 per week on the grounds that ''the service, furniture, furnishings or equipment provided with the accommodations have been substantially increased,'' and that the increase occurred after the date of the order determining the maximum rent. This petition stated in bold face type above the signature of defendants that ''You may not demand or receive more than the maximum rent until it is changed by order of the rent director.'' A copy of defendants' petition was sent to the plaintiffs by the rent director. After reading defendants' petition, plaintiffs made a statement thereon setting forth their views. On October 20, 1947, the tenants filed a complaint with the area rent director. On February 24, 1948, the area rent director determined that the maximum rent for the accommodations should be adjusted on the grounds stated in sec. 5 (a) 3 of the Rent Regulations and ordered that the maximum rent be changed from $30 per month to $51 per month completely furnished, and that the order be effective on December 4, 1947. On March 10, 1948, defendants filed an application for a review of the rent director's determination. On April 27, 1948, the Deputy Regional Housing Expediter affirmed the order of February 24, 1948.

125

■ Defendants, citing secs. 825.64 (2) (c) and 825.65 (a), of the Maximum Rent Regulations, contend that the $18 weekly rental collected was the maximum rent for the accommodations until the Housing Expediter should fix a different rental. The sections of the regulations cited by defendants are not applicable to the situation presented by the record. The first section cited relates to controlled housing accommodations first rented on or after July 1, 1947, and states that the maximum rent shall be the first rent for such accommodations, and that within 30 days after renting, the landlord shall register the accommodations. The apartment plaintiffs rented was then registered at $30 per month, as shown by the exhibits and testimony. Sec. 7 of the Rent Regulation provides that landlords of controlled accommodations rented or offered for rent shall file in triplicate a written statement on the form provided to be known as a registration statement. For housing accommodations first rented on or after June 1, 1947, such registration statement shall be filed on or before July 30, 1947, or within 30 days after first renting, whichever is later. The original remains on file with the expediter, one copy is delivered to the tenant and one copy is returned to the landlord. In any subsequent change of tenancy the landlord is required to exhibit to the new tenant his stamped copy of the registration statement and should obtain the tenant's signature and the date thereof on the back of such statement. When the maximum rent is changed by order of the expediter, the landlord is required to deliver his stamped copy of the registration statement to the area rent office for appropriate action reflecting such change.

Defendants' petition to adjust the maximum rent, filed on October 14, 1947, was in accordance with sec. 5 (a) 3 under which they asserted that there had been a substantial increase in the furniture, furnishings or equipment provided with the housing accommodations

126

since the date of the order determining its maximum rent, and that the increase occurred while the accommodations were vacant. Sec. 5 of the regulation states that the adjustment in the maximum rent shall be the amount the expediter finds would have been, on the maximum rent date, the difference in the rental value of the housing accommodations by reason of the change. The regulation further provides that where a petition is filed by the landlord (on the grounds on which they filed the petition in the instant case), the expediter may enter an interim order increasing or fixing the maximum rent until further order, subject to refund by the landlord to the tenant of any amount received in excess of the maximum rent established by final order in such proceeding; that the receipt by the landlord of any rent authorized by such an order shall constitute an agreement by him with the tenant to refund any amount received in excess of the maximum rent established by final order, and that the landlord shall make such refund either by repayment in cash, or where the tenant remains in occupancy, by deduction from the next instalment of rent, or both.

 Under the Housing and Rent Act of 1947 and the Regulations it was the duty of the landlord to register the accommodations, which was done. The maximum rent was $30 per month. After furnishing the apartment he could not raise the maximum rent without an order from the rent director or expediter. Defendants did not file a petition for such an order until October 14, 1947, one month after plaintiffs paid the rent demanded, which was in excess of the maximum rent for the accommodations. Defendants are in error in their statement that they had 30 days from the time they accepted the excess rent in which to file a petition for adjustment. A landlord is not permitted to demand or receive more than the maximum rent unless authorized so to do by an order of the rent

director. No effort was made to secure an interim order.

Defendants say that they have the duty to refund only if the order under sec. 825.65 (c) of Rent Regulations is issued in a proceeding commenced by the expediter within three months after the date of filing such registration statement. This clause relates to the original registration statement and has no relevancy in this case. Furthermore, sec. 10 of the Regulation states that persons violating any provision of the regulations are subject to civil enforcement actions and suits for treble damages as provided by the Act. It is obvious that the Regulation could not take away any right given by the Act. Defendants maintain that there had been a substantial change in the accommodations, from an unfurnished to a completely furnished apartment; that the change occurred while the apartment was vacant; that plaintiffs were the first tenants to occupy the premises after the change; that the housing expediter, after an application and hearing, increased the rental from $30 to $51 per month; that defendants did everything required of them; and that there was no violation or wilful violation of the law. Defendants violated the law in demanding and accepting more than the maximum rent. They knew that the maximum rent was $30 per month, yet they accepted rent at the rate of more than $72 per month. Their petition for adjustment upward of the maximum rent stated that they could not demand or receive more than the maximum rent until such rent was changed by order of the rent expediter. Up to the time of the trial they had not refunded any of the excess rent received. Defendants recognized plaintiffs as the tenants of the apartment until February 29, 1948. The fact that Mr. Lutz charged Mrs. Nielson more than the maximum rent or that, without permission of defendants, he allowed Mrs. Nelson to occupy the premises, does not

excuse defendants. The misbehavior, if any, of Mr. Lutz should not defeat the operation of the Act and Regulations. The duty to avoid overcharge is primarily the responsibility of the landlord. The landlord alone, because of his superior position generally in the housing shortage situation, was made the offender under the statute. Whether the excess rent was willingly or unwillingly paid, the Act prohibited the landlord from accepting it and provided for its recovery from him.

 Defendants assert that treble damages cannot be allowed ''when there is no wilful violation or the result of failure to take proper precautions.'' The burden was on plaintiffs to prove that defendants demanded or accepted rent in excess of the maximum rent. Plaintiffs made this proof. The proviso in section 205 states that the liquidated damages shall be the amount of the overcharge if the defendant proves that the violation was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation. The burden was on the defendants, under the proviso, to prove that the violation was neither wilful nor the result of failure to take practicable precautions against the occurrence thereof. The court found that there was a violation and that the violation was wilful. We find that defendants did not sustain the burden, to avoid a judgment for treble damages, of proving that the violation was neither wilful nor the result of failure to take practicable precautions against the occurrence thereof. The evidence shows that defendants wilfully overcharged plaintiffs.

 Defendants, stating that there was no wilful violation, argue that the court erred in allowing attorney's fees. We have held that the evidence sustains plaintiff's position that there was a wilful violation. Defendants also say that the court should not have allowed attorney's fees without proof of the

value of the services rendered. In *Church v. Church,* 324 Ill. App. 557, the court said (563):

"Plaintiff argues that it was error to enter an order allowing defendant additional solicitor's fees without taking evidence as to the value of the services rendered. Several cases are cited, such as *Blake v. Blake,* 80 Ill. 523; *Hunter v. Hunter,* 121 Ill. App. 380; *Hopper v. Hopper,* 314 Ill. App. 572, and *Knol v. Knol,* 171 Ill. App. 412. While the safe rule is to offer evidence, we hold there was no reversible error in entering this order. The amount is not large and the judges of this court are not without knowledge as to the actual value of services here rendered nor of the extent of such services, which appear from the record. Plaintiff does not urge the amount allowed is, in fact, unreasonable. In *Wesselhoeft v. Wesselhoeft,* 369 Ill. 419, the Supreme Court allowed a much larger sum as fees, without opinion evidence of value under circumstances not unlike those disclosed by this record, although it was there urged the amount allowed was, in fact, unreasonable."

A perusal of the record convinces us that the fee ($125) allowed to plaintiffs for their attorney's services is reasonable.

For the reasons stated, the judgment of the county court of Cook county is affirmed.

*Judgment affirmed.*

Lewe, P. J., and Kiley, J., concur.